UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT PIKEVILLE**

SHEILA DIANNE KILLION,[1]        )
                                 )
        Plaintiff,               )
                                 )        Civil Case No.
v.                               )        7:18-cv-27-JMH
                                 )
ANDREW SAUL, COMMISSIONER OF     )        **MEMORANDUM OPINION**
SOCIAL SECURITY,[2]              )        **AND ORDER**
                                 )
        Defendant.               )
                                 )

* * *

Plaintiff, Sheila Dianne Killion, brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. [DE 1]. The Court, having reviewed the record and the motions filed by the parties, [DE 20, 22], will **AFFIRM** the Commissioner's decision as no legal error occurred and it is supported by substantial evidence.

I.    **STANDARD FOR DETERMINING DISABILITY**

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason

---

[1] The Plaintiff's last name is "Killion" not "Dillion," as Plaintiff has acknowledged was incorrectly entered. [DE 17-4 at 2, PageID #832].

[2] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Nancy Berryhill was serving as Acting Commissioner of Social Security when this action was filed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. PROCEDURAL AND FACTUAL HISTORY

Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability beginning in October 2015. [TR 203-213]. The claim was denied initially and upon reconsideration. [TR 119, 89-89, 117-118]. Killion pursued her claims at a hearing in front of an Administrative Law Judge ("ALJ") on April 26, 2017. [TR 36-76]. ALJ Jerry Meade issued a decision on October 27, 2017,

denying Killion's claims and finding that she was not disabled, as defined under the Act. [TR 13-40]. The Appeals Council denied review, making it the Commissioner's final decision for purpose of judicial review. [TR 1-5]. This appeal followed pursuant to 42 U.S.C. § 405(g). [DE 1]. Consistent with the Court's Standing Scheduling Order, [DE 10], the parties have submitted cross motions for summary judgment, which are ripe for review. [DE 20, 22].

Killion alleges onset of disability at 61 years of age. [TR 203]. She has a GED and four years of college education, but no degree. [TR 21]. Killion engaged in past relevant work as a maid and a landscaper. [TR 32, 275].

Killion claims disability as a result of numerous impairments, including brain injuries related to a past car accident, as well as impairments to her back, vision, speech, memory, dizziness, thyroid, and stomach. [TR 203, 237]. At her hearing, Killion testified that injuries to her head and back currently keeping her from working. [TR 46, 47]. Specifically, Killion reports suffering injuries to her brain, back, related to a car accident in October 2015. [TR 46, 47, 52-54]. She further claims having balancing issues, anxiety, and a fear of walking up and down steps. [TR 54].

Killion also testified that she spends most of her days laying down on the bed, watching TV, and working puzzle books. [TR 59]. She takes care of her own house. [TR 60-61]. She further reports

having a driver's license but not driving that often due to anxiety and back problems. [TR 47]. She does go out on small trips occasionally, including going to church and the Post Office. [TR 58]. She also estimated that she could lift no more than 10-15 pounds, which causes increased back pain. [TR 55].

Killion began her treatment with her primary care physician, Dr. Gary Francis, D.O. in September of 2015. Subsequently, on October 21, 2015, Killion was involved in a single-car automobile accident. [TR 332]. Killion was admitted to the Pikeville Medical Center in an unresponsive state. [TR 329-33]. She was diagnosed with chest trauma, multiple thoracic spine fractures, and a traumatic brain injury. [Id.].

As a result of the accident, Killion was later transferred to Baptist Health for additional care. At Baptist Health, she treated for gait, mobility, and speech rehabilitation issues. [TR 325-28, 334-47, 345-61, 339-45, 361-94, 639-69, 677-726].

In addition to her accident-related care, Killion treated with Dr. Francis for high blood pressure, low back pain, high cholesterol, and balance issues. [TR 481-540, 568-75, 577-628]. Dr. Francis opined that Killion had a history of traumatic brain injury, anxiety, fatigue, and alcohol abuse. [TR 541]. Similarly, he claimed that Killion had very impaired and limited memory and difficulty walking. [TR 727]. As a result, Dr. Francis concluded that Killion's impairments were disabling. [TR 541, 727].

Dr. Curtis Gale-Dyer, D.O., evaluated Killion in connection with her disability application. [TR 451-53]. He noted that Killion had no loss of musculoskeletal strength nor any neurological deficits. [TR 453].

Two state agency physicians reviewed Killion's medical records. First, state agency physician, Allen Dawson, M.D., concluded that Killion's records reflect that she could perform the equivalent of a full range of medium work. [TR 74-75]. Second, state agency physician, Robert Culburtson, M.D., reviewed Killion's medical records and agreed that she was not disabled but could perform the equivalent of a full range of medium work. TR 99-101]. However, a physical therapist concluded that Killion could perform less than a full range of sedentary work. [TR 542-45].

Dr. William Rigby, Ph.D., evaluated Killion's psychological condition, diagnosing her with anxiety disorder. [TR 456-60]. He concluded that she had no limitations to her ability to sustain concentration and persistence to complete tasks and only moderate limitations in her ability to follow simple instructions, maintain social interaction, and adapt to work pressures. [TR 459-60].

Two agency psychologists reviewed Killion's records. First, state agency psychologist, R. Leon Jackson, Ph.D., reviewed Killion's records and concluded that she had only non-severe mental impairments that did not significantly affect her ability to

perform basis work-related activities. [TR 72-73]. Second, Dr. Ann Demaree, Ph.D., reviewed the same records and concurred.

After the hearing and considering all the evidence, the ALJ issued his decision on October 27, 2017. [TR 13-40]. At Step One, the ALJ determined that Killion has not engaged in substantial gainful activity since October 21, 2015, the alleged onset date. [TR 18]. At Step Two, the ALJ found that Killion suffered from the following severe impairments: degenerative disc disease of the lumbar spine; history of thoracic spine fractures and traumatic brain injury ("TBI"); anxiety; and alcohol abuse. [TR 18]. But, at Step Three, the ALJ found that none of those impairments or combination or impairment met or medically equaled the severity of any of the listed impairments. [TR 20-23]. In reaching this conclusion, ALJ Meade found that Killion had not satisfied the criteria of Listings 1.00, 1.04, 11.00, 11.08, 11.18, 12.6, 12.02, 12.05, and 12.09. [Id.]. Before proceeding to Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c). Specifically, the ALJ found Killion could perform the following tasks:

> Limited to simple, routine, and repetitive tasks.
> She can have only occasional changes in the work
> setting. She can have no interaction with the
> public. She can have occasional interaction with
> co-workers and supervisors.

[TR 23].

The ALJ then concluded, at Step Four, that Killion is capable of performing past relevant work as a maid. [TR 32]. In addition, the ALJ determined that given Killion's age, education, work experience, and RFC, "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." [TR 32-33]. ALJ Meade based his conclusion on testimony from a vocational expert ("VE") that Killion could be able to perform the requirements of occupations such as store laborer (60,000 jobs nationally), assembler (39,000 jobs nationally), and sorter (20,000 nationally). [TR 33]. Thus, the ALJ determined Plaintiff was not disabled under the Social Security Act.

Killion argues the ALJ was an inferior officer under the Appointments Clause and was not properly constitutionally appointed consistent with that clause. [DE 22-1, at 1, 9-10, PageID #866, 874-75]. Killion further argues that ALJ Meade erred in weighing the opinion of Dr. Gary Francis, D.O, Killion's primary treating physician. [Id. at 9-11, PageID #875-76]. The Commissioner contends that the ALJ's decision was proper and should be affirmed.

### III. STANDARD OF REVIEW

When reviewing the ALJ's ruling, this Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions

7

of credibility.'" *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. We are to affirm the decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## IV. ANALYSIS

### A.   Killion Waived Her Appointments Clause Argument.

Killion argues the ALJ was an inferior officer under the Appointments Clause and was not properly constitutionally appointed consistent with that clause. [DE 22-1, at 1, 9-10, PageID #866, 874-75]. Killion has waived this argument and it is also devoid of merit.

A constitutional challenge under the Appointments Clause is "nonjurisdictional," and thus a party may forfeit its Appointments Clause argument by failing to raise it. *See*, *e.g.*, *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795, 798 (8th Cir. 2013); *see also, e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 878-79 (1991); *id*. at

893-94 (Scalia, J., concurring in part) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.").

A party appealing from the decision of the Commissioner of Social Security Administration can waive an argument she did not assert it before the agency at any point in the administrative proceedings below. *See, e.g.*, *Lukkonen v. Comm'r of Soc. Sec'y*, 653 F. App'x 393, 405 (6th Cir. 2016) (claimant waived challenge to ALJ's failure to issue subpoena where she did not raise claim before ALJ); *Maloney v. Comm'r of Soc. Sec'y*, 480 F. App'x 804, 810 (6th Cir. 2012) (claimant waived argument that was neither presented to ALJ nor Appeals Council); *see also Napier v. Dir., Office of Worker's Comp.*, 999 F.2d 1032, 1035 (6th Cir. 1993) (plaintiff waived claim under Black Lung Benefits Act by failing to raise it at administrative level); 20 C.F.R. § 404.933(a)(2) (in request for hearing before an SSA ALJ, claimant must set forth in writing "[t]he reasons [the claimant] disagree[s] with [SSA's] previous determination or decisions"); *id*. § 404.939 (claimant must notify ALJ "at the earliest possible opportunity" regarding concerns about "the issues to be decided at the hearing"); *id*. § 416.1439 (same); *id*. § 404.940 ("object[ion] to the [ALJ] who will conduct the hearing" must be raised at the "earliest opportunity");

9

*id.* § 416.1440 (same); *id.* § 404.946(b) (ALJ authorized to consider new issues identified before notice of hearing decision is mailed).

Appointments Clause challenges are no more immune from waiver than other challenges. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that parties may not wait until they are in court to raise a statutory "defect in the . . . appointment" of the official who issued the agency's initial decision); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) (plaintiff required to exhaust constitutional claim to administrative agency before seeking review in federal court); *cf. Lucia*, 138 S. Ct. at 2055 (holding that plaintiff had timely challenged appointment where he contested validity of appointment during administrative proceedings). Thus, even in the wake of the decision in *Lucia*, a challenge to the appointment of a Social Security Administration ALJ must be raised in the administrative proceedings in order to preserve it for judicial review. *See, e.g.,* Order at 55-56 (ECF No. 17), *T. v. Comm'r of Soc. Sec'y Admin.*, No. 1:17-cv-00650-RGV (N.D. Ga. Sept. 28, 2018); Order at 5 (ECF No. 24), *Williams v. Berryhill*, No. 2:17-cv-87-KS-MTP (S.D. Miss. Sept. 28, 2018); *Davidson v. Comm'r of Soc. Sec'y*, No. 2:16-cv-00102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5-6 (N.D. Iowa Sept. 14, 2018); *Iwan v. Comm'r of Soc. Sec'y*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) ("Because

Iwan did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue."); *Hugues v. Berryhill*, No. CV 17-3892-JPR, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."). Plaintiff's claim for relief under the Appointments Clause was waived because she did not rise it during the administrative proceedings in this matter.

Furthermore, "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *Vasquez v. Astrue*, No. 6:12-CV-125-KSF, 2013 WL 1498895, at *6 (E.D. Ky. Apr. 11, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Killion failed to do so. In sum, Killion argues that the ALJ was not properly appointed, and thus, Social Security Ruling ("SSR") 17-1p, 2017 WL 898573, requires remand of her case in light of *Lucia*. [DE 22-1, at 1, 9-10, PageID #866, 874-75]. As the Commissioner correctly notes, Killion makes the conclusory allegation that SSR 17-1p "clearly undercuts" the Court's and Commissioner's position and "directly applies herein",

but fails to explain how are why it does so. [Id.]. As a result, we find that Killion has waived this argument. *See United States v. Demjanjuk*, 367 F.3d 623, 638 (6th Cir. 2004).

**B.    The ALJ did not Err in Weighing the Medical Opinion Evidence.**

Killion challenges the ALJ's weighing of the medical opinion evidence. [DE 22-1, at 7-11, PageID #866, 872-76]. In support, Killion argues that the ALJ should have given controlling weight to Dr. Francis' opinion that Killion was disabled and she had difficulty walking and with memory. [Id. at 7, PageID #872]. We disagree.

Dr. Francis treated Killion for, among other things, her accident-related injuries. [TR 481-540, 568-75, 577-628]. Dr. Francis ultimately concluded that that Killion's impairments were disabling. [TR 541, 727]. Dr. Francis also stated that that Killion was "very impaired [with] limited amount of memory" and noted that Killion had "difficulty walking" and had "difficulty with her gait."

The ALJ found neither of these conclusions were entitled to controlling weight. First, the ALJ found that Dr. Francis' conclusory statement about Killion being disabled was not a medical opinion, and thus was not entitled to controlling weight. [TR 28]. Second, the ALJ analyzed the six factors under 20 C.F.R.

404.1527(c), and found "no basis for giving Dr. Francis' opinion controlling weight." [Id.].

Killion argues that the ALJ erred in making both of these determinations. Killion first argues that the ALJ erred by failing to give Dr. Francis' opinion, that Killion was disabled, controlling weight. [DE 22-1, at 9-11, PageID #874-76]. Second, she argues, [id.], that the ALJ should have given weight to Dr. Francis' opinion that Killion was "very impaired [with] limited amount of memory" and noted that Killion had "difficulty walking" and had "difficulty with her gait." [TR 541, 727].

In support, Killion claims that Dr. Francis' "[g]iven Dr. Francis' unique perspective, giving controlling weight to the primary treating physician here is most apropos." [DE 22-1, at 11, PageID #876]. Killion points out that Dr. Francis treated Killion prior to her October 21, 2015 accident and continued to treat her afterward. [Id. at 10, PageID #875]. This, Killion asserts, included reviewing medical records from other sources, including Pikeville Medical Center, Baptist Hospital, as well as Killion's physical therapy and rehabilitation records. [Id.].

Thus, Killion argues that that the ALJ "failed to provide 'good reasons' for refusing to give Dr. Francis...true controlling weight and that failure suggests that the ALJ failed to properly apply the treating physician rule set forth in 20 C.F.R. § 404.1527." [DE 22-1 at 11, PageID #876]. Accordingly, Killion

argues that the ALJ should have given Dr. Francis's conclusions controlling weight. As such, Killion requests remand.

The Commissioner disagrees. The Commissioner argues that that ALJ gave a very detailed analysis of Dr. Francis's opinions and that the ALJ's weighing of the opinions should not be disturbed. [DE 20 at 8, PageID #858]. First, the Commissioner states that the ALJ was not required to accept Dr. Francis' ultimate conclusions because they are not medical opinions. [DE 20 at 8-9, PageID #859]. Second, the Commissioner argues, [id. at 9-10, PageID #859-60], that the ALJ properly analyzed the required six factors in discounting Dr. Francis' conclusions that that Killion was "very impaired [with] limited amount of memory" and noted that Killion had "difficulty walking" and had "difficulty with her gait." [TR 541, 727].

However, the ALJ was not required to give controlling weight to Dr. Francis's conclusions, because they constitute an ultimate conclusion, not a medical opinion. As a result, Killion's first argument fails.

In determining a claimant's residual functional capacity, an ALJ must decide what weight, if any, to give to the medical opinions of record. "Medical opinions" are:

> [S]tatements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and

14

prognosis, what you can still do despite
[your] impairment(s), and your physical or
mental restrictions.

20 C.F.R. § 404.1527(a)(2).

Some "medical opinions" are entitled to "controlling weight."
*See id.* § 404.1527(c)(2). When evaluating medical opinion, the
ALJ must consider certain factors.[3] *See* 20 C.F.R. § 404.1527(c). A
treating physician's opinion is given controlling weight when it
"is well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in [the] case record." 20 C.F.R. §§
404.1527(c)(2), 416.927(c)(2).

It is well-settled that an ALJ, in assessing medical evidence
in a disability case, is required to give greater weight to the
opinions of a treating physician than to those of non-treating
physicians—the so-called "treating-physician rule" relied upon by
Plaintiff. *See Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472,
474 (6th Cir. 2012) (citing *Blakley v. Comm'r of Soc. Sec.*, 581
F.3d 399, 406 (6th Cir. 2009)). When a treating physician's
opinion is not given "controlling weight," it is still entitled to
deference and the ALJ must assess the following factors to

---

[3] For claims filed on or after March 27, 2017, the agency's regulations have
been amended to provide that an ALJ is not required to "defer or give any
specific evidentiary weight, including controlling weight, to any medical
opinion(s) ..., including those from [a claimant's] medical sources." *See* 20
C.F.R. §§ 404.1527, 404.1520c(a) (2017); *see also Revisions to Rules Regarding
the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5852-60 (Jan. 18, 2017)
(final rules).

determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician, the medical evidence supporting the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

As such, an ALJ must simply provide good reasons for the weight he gives a medical opinion. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). The Court will reverse and remand a denial of benefits, even though "substantial evidence otherwise supports the decision of the Commissioner," when the ALJ fails to give good reasons for discounting the opinion of a claimant's treating physician. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 543-46 (6th Cir. 2004).

This has been interpreted to mean that "[a]lthough the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion' — not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (unpublished) (citation omitted). The ALJ's decision must therefore contain specific reasons supported by evidence in the record for the weight given to an opinion. SSR 96-2p.

However, this "treating-physician rule," only applies to *medical* opinions. *See Dunlap*, 509 F. App'x at 474-76 (emphasis added). While a medical expert may opine "on issues such as whether [Plaintiff's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as Plaintiff's RFC or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). The Sixth Circuit has held that a treating physician's conclusion that a claimant is "unable to work" or "disabled" does not constitute a "medical opinion" under agency regulations. *See Dunlap*, 509 F. App'x at 474-76.

Here, Dr. Francis's concluded that Killion's impairments were "of such nature so as to disable the claimant from engaging in substantial gainful activity." [TR 27]. As the ALJ noted, [TR 28], this was not a medical opinion. *See* 20 C.F.R. § 404.1527(d). Such issues are reserved for the Commissioner. *Id.* Because these conclusory statements by Killion's treating physician did not constitute "medical opinions," they were not entitled to controlling weight nor was the ALJ required to analyze the factors set forth in 20 C.F.R. § 404.1527(c). Consequently, Killion's argument on this ground fails.

Dr. Francis made other findings as well. In particular, he concluded that Killion was "very impaired [with] limited amount of memory" and noted that Killion had "difficulty walking" and had "difficulty with her gait." [TR 541, 727]. Killion now argues that that the ALJ "failed to provide 'good reasons' for refusing to give Dr. Francis...true controlling weight and that failure suggests that the ALJ failed to properly apply the treating physician rule set forth in 20 C.F.R. § 404.1527." [DE 22-1 at 11, PageID #876].

The Commissioner argues that the statements Dr. Francis made in support of his conclusion that Killion's memory was "very impaired" and that she had "difficulty" walking were not entitled to great weight because they were vague. Even so, the Commissioner argues, the ALJ "explicitly considered each factor set forth in 20 C.F.R. § 404.1527." [DE 20 at 9, PageID #859].

Killion is incorrect. It is true that the ALJ found "no basis for giving Dr. Francis' opinion controlling weight." [TR 28]. However, where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion. *See, e.g., Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 652 (6th Cir.2006) (*en banc*); *Warner,* 375 F.3d at 391–92; *Martin v. Comm'r of Soc. Sec.,* 170 Fed. Appx. 369, 372–73 (6th Cir.2006); *Ford v. Comm'r of Soc. Sec.,* 114 Fed. Appx.

194, 197 (6th Cir.2004). In the instant case, the ALJ appropriately analyzed the factors under 20 C.F.R. § 404.1527, and found that Dr. Francis' conclusions were not supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the record. [TR 28].

First, the ALJ considered the length and frequency of the treatment relations, pursuant to 20 C.F.R. § 404.1527. He noted that Killion treated with Dr. Francis fourteen (14) times, equaling approximately one visit per month, between September 14, 2015 and October 2016. [TR 28, 481-540, 568-75, 577-638]. Second, he found that the treatment relationship consisted of routine physical examinations, prescription fills, and referrals for diagnostic testing. [Id.]. Third, he found that Dr. Francis noted Killion's memory is appearing worse, took multiple medications, and had difficulties with gait. [TR 28-29].

However, at the fourth factor, the ALJ found that that Dr. Francis' opinions about Killion's limitations are inconsistent with the objective evidence. [TR 29]. In particular, he found that the Dr. Francis noted Killion's memory was very impaired, but in treatment notes from February of 2016, noted that her immediate and prospective memory had improved. [TR 29, 630-676].

Moreover, as to Dr. Francis' conclusions about Killion's gait, the ALJ found that Killion's gait was improved during an

April 2016 examination, [TR 29, 450-454], and that Dr. Johnson noted a normal gait. [TR 29, 461-470]. Dr. Francis' own records indicate that Killion had only a small gait disturbance, [TR 29, 576-629], and Killion, herself, indicated that her gait was only sometimes off. [Id.].

At the fifth factor, which requires the ALJ to consider whether the treating physician is a specialist, the ALJ noted that Dr. Francis specializes in internal medicine. [TR 29]. Finally, at the sixth factor, the ALJ noted that there was no indication that Dr. Francis was familiar with the Social Security disability program and its evidentiary requirements, nor was there any indication that Dr. Francis was familiar with the medical evidence of record when he issue the opinion. [TR 29-30].

These considerations provide more than sufficient evidence to support the ALJ's determination that Dr. Francis' conclusions, regarding the severity of Killion's memory and gait, impairments were entitled to little weight. [TR 30]. Accordingly, we reject Killion's request that we set aside that finding.

Because Killion's argument boils down to what weight should be given Dr. Francis' medical opinions, and because the record supports the ALJ's findings with respect to Dr. Francis' opinions, we find no error in the ALJ's decision to discount Dr. Francis' opinion. *See Mullins v. Sec'y of Health & Human Servs.,* 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the

weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings. Further, there is ample support in the record in addition to [the disputed] medical opinion to uphold the ALJ's findings with respect to the severity of [the claimant's] condition.").

## V.    CONCLUSION

The Court, having found no legal error on the part of the ALJ and that his decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED.**

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 22] is **DENIED;**

(2) Defendant's Motion for Summary Judgment [DE 20] is **GRANTED;**

(3) Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 24th day of September, 2019.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge